IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH LEDBETTER,<br><br>                    Petitioner,<br><br>          vs.<br><br>JAMES A. YATES, Warden, Pleasant Valley State Prison,<br><br>                    Respondent. | No. 2:11-cv-01022-JKS<br><br>MEMORANDUM DECISION |

Kenneth Ledbetter, a state prisoner appearing *pro se*, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254.  Ledbetter is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the Pleasant Valley State Prison. Respondent has answered and Ledbetter has replied.  Ledbetter has requested an evidentiary hearing.

## I.  BACKGROUND/PRIOR PROCEEDINGS

Following a jury trial in the Sacramento County Superior Court Ledbetter was convicted of first degree burglary (Cal. Penal Code § 459), robbery in concert (Cal. Penal Code §§ 211, 213(a)(1)(A)), being a felon in possession of a firearm (Cal. Penal Code § 12021(a)(1)), and possession of methamphetamine (Cal. Health & Safety Code, § 11377(a)).  The jury found true the special allegations that another person other than an accomplice was present in the residence during the commission of the burglary (Cal. Penal Code § 667.5(c)(21)), and that Ledbetter was a principal armed with a firearm when he committed the burglary and robbery (Cal. Penal Code § 12022(a)(1)).

In a separate court trial, the court found true the allegations that Ledbetter had two prior "strike" convictions (Cal. Penal Code §§ 667,(b)-(i), 1170.12.)).  The trial court denied Ledbetter's motion to strike one of the "strike" priors.  In December 2004 Ledbetter was sentenced to an indeterminate term of fifty-two years to life in state prison, plus eleven years. The California Court of Appeal affirmed Ledbetter's conviction and judgment in an unpublished decision,[1] and the California Supreme Court denied review on September 9, 2009.  On December 17, 2009, Ledbetter filed a petition for habeas relief in the Sacramento County Superior Court, which was denied in a reasoned, unreported decision.  The California Court of Appeal summarily denied Ledbetter's habeas petition without opinion or citation to authority, and the California Supreme Court also summarily denied Ledbetter's habeas petition on October 20, 2010. Ledbetter timely filed his Petition for relief in this Court on April 7, 2011.

The California Court of Appeal summarized the facts underlying Ledbetter's conviction:

> On November 24, 2005, [Ledbetter] spent some time at the home of Anthony Ames, drinking and smoking marijuana.  [Ledbetter] asked Ames if he would go with him somewhere, and Ames agreed.  At approximately 2:00 p.m., [Ledbetter] and Ames arrived at the home of David Smith, an auto mechanic who had previously sold a Ford Explorer to [Ledbetter's] wife and, when it "quit running," agreed to exchange it for a Chevy Camaro.  [Ledbetter] gave Ames a handgun and told him to grab a laptop.
> Smith heard some noises at the front door.  As he looked through the peephole, Ames broke down the door and rushed in with [Ledbetter].  [Ledbetter] and Ames surrounded Smith and asked him, "Where's the money, where's the safe?"  Smith told them there was no safe.  Ames hit Smith in the face with the gun, knocking Smith to the floor and rendering him unconscious.  Ames ran out of the house with the laptop and jumped into the car.  A minute or so later, [Ledbetter] got in the car. Ames handed him the laptop and they drove home.
> By the time Smith regained consciousness, the police had arrived.  Smith's computer and modem and other electronic items were missing.  Although Smith was

---

[1] *People v Ledbetter*, No. C057751, 2009 WL 1804157 (Cal. Ct. App. June 23, 2009).

2

"badly" injured, having received wounds to his head and body, he refused medical treatment.

Within approximately 12 hours of the initial incident, [Ledbetter] asked Ames if he would accompany him back to Smith's house to retrieve the Camaro. Ames and [Ledbetter] returned to Smith's house. Smith was in bed, but went to the garage to meet them as soon as he was alerted they were there. [Ledbetter] and Ames led Smith to believe they had weapons and if he did not cooperate, "it was going to get worse." [Ledbetter] forced Smith to sign over the rights to the Camaro, telling Smith he "owed it to him." [Ledbetter] took the keys and he and Ames left, with [Ledbetter] driving the Camaro.

On December 6, 2005, California Highway Patrol Officer Helen Gomez noticed [Ledbetter] driving the Chevy Camaro without a seatbelt and pulled him over. When Gomez approached the Camaro, [Ledbetter] dropped his hands down underneath the seat and out of view. Gomez instructed [Ledbetter] to place his hands on the dash. He did so momentarily, then dropped his left hand back down out of sight. Gomez again instructed [Ledbetter] to place his hands on the dash. When Gomez asked [Ledbetter] for his license, registration and proof of insurance, [Ledbetter] told her the car belonged to his wife and he did not have a license. She ran the license plate and discovered the car was stolen and called for backup.

When backup arrived, [Ledbetter] was taken into custody. Officers searched the Camaro and found a loaded handgun under the driver's seat, and a box of ammunition and a shoulder holster in the car. Officers found a canister containing 2.9 grams of methamphetamine in the pocket of the jacket [Ledbetter] was wearing, and a pipe in the center console of the car.

Ames testified that he borrowed the Camaro at least once in December 2005, placing the gun under the seat in the car. When he returned the car to [Ledbetter], he forgot to retrieve the gun from under the seat.

When the Camaro was eventually returned to Smith, he found two cell phones inside, one of which had video images of [Ledbetter] and Ames.[2]

## II.  GROUNDS RAISED/DEFENSES

Ledbetter raises seven grounds for relief:  (1) that the application of his pre-1994 priors under California's three-strikes law is unconstitutional; (2) the trial court unfairly limited the defense's cross-examination of prosecution witnesses; (3) ineffective assistance of counsel;

---

[2] *Id.* at 1-2 (footnotes omitted).

(4) denial of counsel of choice (*Marsden* motions[3]); (5) ineffective assistance of appellate

counsel; (6) the sentence imposed constitutes cruel and unusual punishment under the Eighth

Amendment; and (7) ineffective assistance of trial counsel.  Respondent contends that

Ledbetter's first, second, and fourth grounds are procedurally barred.

### III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States" at the time the state court renders its decision or "was based

on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding."[4]  The Supreme Court has explained that "clearly established Federal law" in

§ 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the

time of the relevant state-court decision."[5]  The holding must also be intended to be binding upon

the states; that is, the decision must be based upon constitutional grounds, not on the supervisory

power of the Supreme Court over federal courts.[6]  Thus, where holdings of the Supreme Court

regarding the issue presented on habeas review are lacking, "it cannot be said that the state court

---

[3] The term "*Marsden* motion" comes from *People v. Marsden,* 465 P.2d 44, 47-48 (Cal. 1970), a California Supreme Court case that held that, as part of a criminal defendant's right to effective assistance of counsel under the Sixth Amendment, a trial judge must permit a defendant requesting substitute counsel the opportunity to present his reasons for the request, *i.e.* evidence and argument to establish that he is receiving ineffective assistance of counsel.

[4] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[5] *Williams*, 529 U.S. at 412 (alteration added).

[6] *Early v. Packer*, 537 U.S. 3, 10 (2002).

'unreasonabl[y] appli[ed] clearly established Federal law.'"[7]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be "objectively unreasonable," not just "incorrect or erroneous."[8]  The Supreme Court has made clear that the objectively unreasonable standard is "a substantially higher threshold" than simply believing that the state-court determination was incorrect.[9]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[10]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[11]  Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[12]

---

[7] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[8] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[9] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).

[10] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

[11] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[12] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (citations omitted); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

The Supreme Court recently underscored the magnitude of the deference required:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther.* Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[13]

In applying this standard, this Court reviews the "last reasoned decision" by the state court.[14] State appellate court decisions that summarily affirm a lower court's opinion without explanation are presumed to have adopted the reasoning of the lower court.[15] This Court gives

---

[13] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

[14] *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)); *cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (explaining "how federal courts in habeas proceedings are to determine whether an unexplained order . . . rests primarily on federal law," and noting that federal courts must start by examining "the last reasoned opinion on the claim . . . . ").

[15] *Ylst*, 501 U.S. at 802-03 ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); *cf. Richter*, 131 S. Ct. at 784 ("As every Court of Appeals to consider the issue has recognized, determining whether a states court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").

the presumed decision of the state court the same AEDPA deference that it would give a

reasoned decision of the state court.[16]

Under California's unique habeas procedure, a prisoner who is denied habeas relief in the

superior court files a new original petition for relief in the court of appeal.  If denied relief by the

court of appeal, the defendant has the option of either filing a new original petition for habeas

relief or a petition for review of the court of appeal's denial in the California Supreme Court.[17]

This is considered as the functional equivalent of the appeal process.[18]  Under AEDPA, the state

court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption

by clear and convincing evidence.[19]  This presumption applies to state-trial courts and appellate

courts alike.[20]

## IV.  DISCUSSION

### A.    Evidentiary Hearing

Ledbetter requests that this Court hold an evidentiary hearing with respect to his second

ground, restriction on the cross-examination on the impeachment of two witnesses (the victim,

---

[16] *See Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

[17] *See Carey v. Saffold*, 536 U.S. 214, 221-22 (2002) (citations omitted) (discussing California's "original writ" system).

[18] *See id.* at 222 ("Thus, typically a prisoner will seek habeas review in a lower court and later seek appellate review in a higher court . . . .").

[19] 28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary . . . ." (citing 28 U.S.C. § 2254(e)(1))).

[20] *See Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004) ("Stevenson does not address these factual findings, let alone challenge them with clear and convincing evidence. Accordingly, we presume them to be correct." (citing 28 U.S.C. § 2254(e)(1); *Pollard v. Galaza*, 290 F.3d 1030, 1035 (9th Cir. 2002))).

David Smith and his co-defendant, Anthony Ames).  The Supreme Court made clear in

*Pinholster* that "review under [28 U.S.C.]  § 2254(d)(1) is limited to the record that was before

the state court that adjudicated the claim on the merits."[21]  "Federal courts sitting in habeas are

not an alternative forum for trying facts and issues which a prisoner made insufficient effort to

pursue in state proceedings."[22]  "If the state-court decision 'identifies the correct governing legal

principle' in effect at the time, a federal court must assess whether the decision 'unreasonably

applies that principle to the facts of the prisoner's case.'"[23]  As the Supreme Court noted, "[i]t

would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a

decision that unreasonably applied federal law to facts not before the state court."[24]  Although

under *Pinholster* an evidentiary hearing in a federal habeas proceeding is not absolutely

precluded, *Pinholster* also made clear that the discretion to grant a request for an evidentiary

hearing is cabined by § 2254(e)(2),[25] which provides:

> If the applicant has failed to develop the factual basis of a claim in State court
> proceedings, the court shall not hold an evidentiary hearing on the claim unless the
> applicant shows that—
>      (A) the claim relies on—

---

[21] *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011); *see Townsend v. Sain*, 372 U.S. 293, 312-13, 319 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992), *superceded in part by statute*, 28 U.S.C. 2254(e)(2) (1996).

[22] *Williams v. Taylor*, 529 U.S. 420, 437 (2000) (quoted with approval in *Pinholster*, 131 S. Ct. at 1401); *see Richter*, 131 S. Ct. at 787 (noting that the basic structure of federal habeas jurisdiction is designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions); *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977) ("[T]he state trial on the merits [should be] the 'main event,' so to speak, rather than a 'tryout on the road' for what will later be the determinative federal habeas hearing.").

[23] *Pinholster*, 131 S.Ct. at 1399 (quoting *Williams*, 529 U.S. at 405).

[24] *Id.*

[25] *Id.* at 1400-01.

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Ledbetter's request in this case does not meet that standard.  Ledbetter has not identified which facts are in dispute or the evidence, documentary or testimonial, that he proposes to introduce.

Accordingly, Ledbetter's request for an evidentiary hearing is **DENIED**.

**B.      Procedural Default**

As relevant to the claims raised in his Petition in this Court, in his petition for habeas relief in the Sacramento County Superior Court, Ledbetter raised the claims that the trial court improperly limited his opportunity to impeach the victim and a witness (Ground 2), that his *Marsden* motions were improperly denied (Ground 4), and that the "Three-Strikes" law violates the *Ex Post Facto* Clause (Ground 1).  The Sacramento County Superior Court denied those claims on the basis that Ledbetter could have raised them on direct appeal.[26]  Respondent contends that, because the Sacramento County Superior Court denied his petition as to those grounds on the basis that they could have been raised on appeal citing *Harris*[27] and *Dixon*,[28] those claims are procedurally barred.  This Court agrees.[29]  That being said, because Ledbetter in his

---

[26] Docket 15-1 at 17-18.

[27] *In re Harris*, 855 P.2d 391, 396 (Cal. 1993).

[28] *Ex parte Dixon*, 264 P.2d 513, 514 (Cal. 1953).

[29] *Bennett v. Mueller*, 322 F.3d 573, 581-82 (9th Cir. 2003).

fifth ground contends that appellate counsel was ineffective for failing to raise those claims on appeal, this Court must nonetheless determine whether the omitted claims had merit.[30]

When there is no reasoned state court decision denying the issues presented to the state court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."[31]  "The presumption may be overcome when there is reason to think that some other explanation for the state court's decision is more likely."[32]  In this case, however, it is clear that the Sacramento County Superior Court declined to address Ledbetter's claims entirely upon procedural grounds; therefore the presumption does not apply.  Consequently, this Court must review the issues presented in Ledbetter's first, second, and fourth grounds *de novo*.[33]

**C.      Merits**

Ground 1:  Application of "Three Strikes" Law

Ledbetter makes a two-prong attack on the application of the "three-strikes" law. Ledbetter first argues that using a conviction that occurred prior to enactment of the "three-strikes" law in 1994 increases the punishment for that crime after the fact, in violation of the *Ex Post Facto* Clause.  Ledbetter also contends that use of the plea-bargained priors in determining application of the "three-strikes" law violated the terms of the earlier plea agreements.

---

[30] *See Jie Lin v. Ashcroft*, 377 F.3d 1014, 1027 (9th Cir. 2004) (holding that the court "must consider the underlying merits of the case to come to a tentative conclusion as to whether [a petitioner's] claim, if properly presented, would be viable," notwithstanding the alleged ineffective assistance of counsel).

[31] *Richter*, 131 S. Ct. at 784-85.

[32] *Id.* at 785.

[33] *Williams v. Cavazos*, 646 F.3d 626, 636-37 (9th Cir. 2011).

Because Ledbetter committed the triggering offense *after* California's "three-strikes" law went into effect, its application to him does not violate the *Ex Post Facto* Clause.[34]

It is well-settled law that if in fact the state breached the plea agreement, the case must be remanded to the state courts for a determination of the appropriate remedy under the circumstances,[35] which, in this case, is most likely specific performance.[36]  The proper interpretation and effect of the agreement between the State of California and Ledbetter in this case is a matter governed by California contract law.[37]  The Ninth Circuit recognizes "that, in California, contracts (including plea bargains) are 'deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws.'"[38]  In this case, the only "breach" alleged is the change in the law, not a breach of a specific promise or representation made to Ledbetter.  Although the latter is a ground upon which a breach of a plea agreement may be found, the former is not.[39]  Ledbetter has not only failed set forth the specific terms of the plea agreement, he has not alleged that any earlier plea agreement contained a specific promise about the manner in which the conviction would be treated as a prior in the future.  Consequently, Ledbetter has failed to carry his burden of showing entitlement to habeas relief.  Ledbetter is not entitled to relief under his first ground.

---

[34] *Brown v. Mayle*, 283 F.3d 1019, 1040 (9th Cir. 2002) (citations omitted), *vacated on other grounds, Mayle v. Brown*, 538 U.S. 901 (2003).

[35] *See Santobello v. New York*, 404 U.S. 257, 262-63 (1971).

[36] *See Buckley v. Terhune*, 441 F.3d 688, 699 (9th Cir. 2006) (en banc).

[37] *Ricketts v. Adamson*, 483 U.S. 1, 6 n.3 (1987).

[38] *Davis v. Woodford*, 446 F.3d 957, 962 (9th Cir. 2006) (citing *People v. Gipson*, 12 Cal. Rptr. 3d 478, 481 (Cal. Ct. App. 2004)).

[39] *See id.*

Ground 2:  Limitation of Cross-Examination

During trial, defense counsel attempted to examine the victim on his two prior drug arrests and on a battery against his wife.  Defense counsel also attempted to examine Ledbetter's co-defendant on his criminal charges.  The trial court denied both attempts.  Ledbetter, citing *Davis v. Alaska*,[40] argues that these rulings limiting the scope of cross-examination violated his Sixth Amendment right to cross-examine those witnesses.

It is clearly established Supreme Court law that the right of a criminal defendant to cross-examine witnesses against him is at the core of the Confrontation Clause of the Sixth Amendment.[41]  The right to cross-examination encompasses the right to attack the general credibility or show possible bias, prejudice, or self-interest in testifying.[42]  This right is made applicable to the states by the Fourteenth Amendment.[43]  That right is not, however, absolute, unfettered and unrestricted.  The right to cross-examination "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process."[44]  "[T]he confrontation clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is

---

[40] 415 U.S. 308 (1974).

[41] *See Crawford v. Washington*, 541 U.S. 36, 50-59, 61 (2004); *Michigan v. Bryant*, 131 S. Ct. 1143, 1149 (2011) (reaffirming that principal); *see also Davis*, 415 U.S. at 315-316 ("The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." (internal quotation marks and citation omitted)).

[42] *Olden v. Texas*, 488 U.S. 227, 231 (1988); *Delaware v. Van Arsdall*, 475 U.S. 673, 678-79 (1986); *Davis*, 415 U.S. at 316.

[43] *Pointer v. Texas*, 380 U.S. 400, 403 (1965).

[44] *Michigan v. Lucas*, 500 U.S. 145, 149 (1991) (internal quotation marks and citation omitted).

12

effective in whatever way, and to whatever extent, the defense might wish."[45]  "[T]rial judges

retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits

on such cross-examination based on concerns about, among other things, harassment, prejudice,

confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally

relevant."[46]  However, "[r]estrictions on a criminal defendant's rights to confront adverse

witnesses . . . 'may not be arbitrary or disproportionate to the purposes they are designed to

serve.'"[47]  "Thus, a trial judge may exclude or limit evidence to prevent excessive consumption

of time, undue prejudice, confusion of the issues, or misleading the jury.  The trial judge enjoys

broad latitude in this regard, so long as the rulings are not arbitrary or disproportionate."[48]  In

considering whether the exclusion of evidence violates due process, this Court must consider the

probative value of the evidence on the central issue.[49]  Finally, assuming exclusion was error, it is

subject to harmless-error analysis.[50]

    In response, Respondent argues that Ledbetter was permitted to impeach the victim on a

number of matters.  This Court agrees.  Although the trial court initially denied Ledbetter's

request to impeach Smith with the pending charges for possession of methamphetamine, it did

---

[45] *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam).

[46] *Van Arsdall*, 475 U.S. at 679; *Davis*, 415 U.S. at 320; *Alford v. United States*, 282 U.S. 687, 694 (1931)).

[47] *Lucas*, 500 U.S. at 151 (quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)).

[48] *Menendez v. Terhune*, 422 F.3d 1012, 1033 (9th Cir. 2005) (citations omitted); *see Montana v. Egelhoff,* 518 U.S. 37, 42-43 (1996) (holding due process rights are not violated by exclusion of relevant evidence where probative value is outweighed by danger of prejudice or confusion).

[49] *United States v. Cruz-Escoto*, 476 F.3d 1081, 1088 (9th Cir. 2007).

[50] *Neder v. United States*, 527 U.S. 1, 18 (1999).

permit Ledbetter to impeach Smith on Smith's testimony that he did not smoke crystal methamphetamine.[51]  It was also stipulated that Smith was facing charges of possession of methamphetamine in Sacramento County and similar charges in Placer County.[52]  Thus, the evidence that would have been covered by cross-examination was presented to the jury via another means.  Thus, because it could not have "had [a] substantial and injurious effect or influence in determining the [outcome],"[53] any error that may have occurred in limiting the scope of cross-examination of the victim on his drug use was harmless.

With respect to the allegations that the victim, Smith, committed battery against his wife, after concluding that Smith had been properly impeached with prior drug and firearm convictions, the trial court indicated that because of concerns that its probative value was substantially outweighed by its prejudicial effect, it intended to exclude it under California Evidence Code Section 352.[54]  Ledbetter's counsel attempted to enter into evidence a restraining order application filed by the victim's wife in which she alleged that Smith had assaulted her and threatened to shoot her and her boyfriend.[55]  The trial court held:

> THE COURT:  All right.  I further find that because it is contained in a restraining order with a boyfriend involved and marital discord that under Evidence Code Section 352 it could result in an undue consumption of time, result in a trial on an unrelated issue when the sole purpose, according to the defense is for veracity.

---

[51] Reporters Transcript on Appeal, Vol. I at 173-75.

[52] Reporter's Transcript on Appeal, Vol. II at 331 (Sacramento County) and 363 (Placer County).

[53] *Brecht v. Abrahamson*, 507 U.S. 619, 622 (1993); *see Fry v. Pliler,* 551 U.S. 112, 121 (2007) (holding that the *Brecht* standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

[54] Reporter's Transcript on Appeal, Vol. I at 175-76.

[55] Reporter's Transcript on Appeal, Vol. I at 176-77.

I did indicate under -- that if the defense wanted to offer this evidence under Evidence Code Section 1103, I would permit it.

But it is my understanding, Mr. Berson, that you do not want to offer this evidence under Evidence Code Section 1103, correct?

MR. BERSON: That is correct.

THE COURT: Then the court's ruling under Evidence Code Section 352, that it is not admitted for veracity, is affirmed based upon the stated reasons in the record.[56]

Ledbetter contends that the trial court improperly precluded cross-examination of his co-defendant, Ames, in several areas. Although the trial court ruled that Ledbetter could impeach his co-defendant, Ames, with a prior juvenile conviction for second-degree burglary, it denied the request to impeach Ames with a juvenile conviction for battery. This constitutes the single instance Ledbetter identifies as improperly restricting his right to cross-examine. Ledbetter was also permitted to cross-examine Ames on his drug use during the relevant time period on the day of the crime,[57] and to question Ames extensively about his plea agreement and whether he stood to benefit from his testimony.[58]

In excluding Ledbetter's proposal to impeach Ames on the juvenile conviction for battery, the trial court held:

THE COURT: In any event, I am going to exercise my discretion under Evidence Code Section 352 and preclude that particular adjudication. I find that the jury has been given sufficient information to determine the veracity by knowing that [Ames] was convicted of the burglary. Its from 1999. It is essentially a juvenile adjudication. It is remote, and I find that the undue consumption of time and other factors related to the prejudicial effect does not outweigh the probative value.

So the Court is going to exclude that misdemeanor juvenile adjudication.[59]

---

[56] *Id.*

[57] Reporter's Transcript on Appeal, Vol. I at 258-59; Vol. II at 319.

[58] Reporter's Transcript on Appeal, Vol. I at 260, 262; Vol. II at 288-90.

[59] Reporter's Transcript on Appeal, Vol. I at 84.

Federal Rule of Evidence 403, the federal counterpart to California Evidence Code § 352, permits the exclusion of evidence if its probative value is "outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  "A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules.  Assessing the probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . ."[60]  California employs a similar rule.[61]  Although the Ninth Circuit has suggested that an abuse of discretion may also amount to a constitutional violation,[62] the Supreme Court has never held that abuse of discretion is an appropriate basis for granting federal habeas relief.  Indeed, quite to the contrary, the Supreme Court has strongly suggested that, while abuse of discretion is an appropriate standard on direct review, in a federal habeas proceeding it is not.[63]

Under the facts of this case, this Court cannot find that the decision of the trial court to limit the scope of the cross-examination of the victim, Smith, or the co-defendant, Ames, was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court rendered its

---

[60] *United States v. Abel,* 469 U.S. 45, 54 (1984); *see Boyd v. City and Cnty. of San Francisco*, 576 F.3d 938, 948 (9th Cir. 2009).

[61] *See People v. Harris*, 118 P.3d 545, 565 (Cal. 2005) ("We review for abuse of discretion a trial court's rulings on the admissibility of evidence.").

[62] *See Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc).

[63] *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) ("It is not even whether it was an abuse of discretion for her to have done so—the applicable standard on direct review. The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of . . . clearly established Federal law." (quoting § 2254(d)(1))).

decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[64]  Ledbetter is not entitled to relief under his second ground.

Grounds 3 and 7:  Ineffective Assistance of Trial Counsel

In his third ground, Ledbetter contends that, although he wanted to use the defense of actual innocence in that he was not at the scene of the crime, his trial counsel was ineffective for forgoing that meritorious defense.  Specifically, Ledbetter argues his trial counsel failed to interview two material witnesses, who would corroborate the fact that he was not at the scene of the crime, and misstated the testimony of the victim.  The Sacramento County Superior Court rejected his argument, holding:

> A petitioner seeking relief by way of habeas corpus has the burden of stating a prima facie case entitling him to relief. (In re Bower (1985) 38 Cal.3d 865, 872.) A petition for writ of habeas corpus should attach as exhibits all reasonably available documentary evidence or affidavits supporting the claim. (People v. Duvall (1995) 9 Cal.4th 464, 474.)  To show constitutionally inadequate assistance of counsel, a defendant must show that counsel's representation fell below an objective standard and that counsel's failure was prejudicial to the defendant. (In re Alvernaz (1992) 2 Cal.4th 924, 937.)  It is not a court's duty to second-guess trial counsel and great deference is given to trial counsel's tactical decisions.   (In re Avena (1996) 12 Cal.4th 694, 722.)  Actual prejudice must be shown, meaning that there is a reasonable probability that, but for the attorney's error(s), the result would have been different. (Strickland v. Washington (1984) 466 U.S. 668, 694.)  A petition alleging ineffective assistance of counsel based on the failure to obtain favorable evidence must show what evidence should or could have been obtained and what effect it would have had.  (People v. Geddes (1991) 1 Cal.App.4th 448, 454.)
>
> Petitioner claims that trial counsel was ineffective for failing to present an alibi defense or to even contact the proposed alibi witnesses.  While Petitioner identifies those witnesses, he does not show what evidence those witnesses would

---

[64] 28 U.S.C. § 2254(d).

have offered if counsel had interviewed them. Since Petitioner has not shown that any error resulted in prejudice to his case, he is not entitled to any relief.[65]

Under *Strickland*, to demonstrate ineffective assistance of counsel, Ledbetter must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[66]  A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."[67]  Ledbetter must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[68]  An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either one of the *Strickland* prongs.[69]

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro, supra,* at 473, 127 S.Ct. 1933.  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.  See *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule,

---

[65] Docket No. 15-1 at 18.

[66] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[67] *Id*.

[68] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[69] *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

the more leeway courts have in reaching outcomes in case-by-case determinations").[70]

It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d)(1) standard.[71]

The Supreme Court, applying the "doubly deferential standard," has made clear that when adjudicating ineffective assistance of counsel claims in federal habeas proceedings, unlike the situation on direct review, focus is not on whether counsel's performance fell below the *Strickland* standard.  Rather, the focus is on whether the state-court decision holding that counsel was not ineffective constituted an "*unreasonable* application of federal law[,] [which] is different from an *incorrect* application of federal law."[72]

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.[73]

Ledbetter appended to his Petition the summary of interviews of Elizabeth Ledbetter in December 2006 and Delaine Smith in February 2007 conducted by an investigator for the Sacramento County Office of the Public Defender.[74]  The incident for which Ledbetter was convicted occurred at approximately 2:00 p.m., November 24, 2005 (Thanksgiving Day).  According to the statement given by Delaine Smith, she had Thanksgiving dinner with Ledbetter

---

[70] *Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009).

[71] *Id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

[72] *Richter*, 131 S. Ct. at 785 (emphasis in the original).

[73] *Id.* at 786.

[74] Copies of these interviews are not included in the copy of the Sacramento County Superior Court habeas petition filed in this Court.  Ledbetter did apparently attach the second page of the Delaine Smith interview to his habeas petition in the California Supreme Court.

and Elizabeth Ledbetter, without any further elaboration as to the time that dinner took place,
how long she was there, or any other detail concerning Ledbetter's whereabouts on Thanksgiving
Day.[75]  The statement given by Elizabeth Ledbetter does not make any mention of either
Thanksgiving dinner or any other event that occurred on November 24, 2005.  Although Delaine
Smith placed Ledbetter at dinner at some time on Thanksgiving Day, it does not establish that he
could not have been at the scene of the crime at 2:00 p.m. on that same day.  Although it was
perhaps improvident of trial counsel not to have interviewed Delaine Smith and Elizabeth
Ledbetter, Ledbetter has not shown that he suffered any prejudice from that omission.

Ledbetter further alleges that, although the victim testified that he didn't see Ledbetter hit
him, in closing argument counsel told the jury that Ledbetter did in fact hit the victim.  Ledbetter
grossly mischaracterizes counsel's argument.  The argument Ledbetter refers to stated:

> The prosecutor talked to you about how there was, what's called,
> circumstantial evidence to show that Kenny had hit Smith.  What the prosecutor
> argued was, well, Smith has more than one injury.  So that's circumstantial evidence
> that Kenny must have hit him, but another reasonable interpretation of the multiple
> injuries that Smith had is that Ames hit him more than once.
> And, in fact, when you look at the photographs of Smith's injuries, you'll see
> that he has a big knot on the side of his head and then sort of cut or gash on his
> cheek.  It's not very big, but its sort of a cut or gash.  It's not the kind of injury that
> would be caused by fists or feet.  It's the kind of injury that would be caused by if
> someone hit you with a gun.  And Ames, by everyone's testimony was the only guy
> with a gun.[76]

By no stretch of the imagination could that argument, which was in response to the argument of
the prosecution, be construed as an admission that Ledbetter hit the victim.  Ledbetter is not
entitled to relief under his third ground.

---

[75] Docket No. 1 at 118.

[76] Reporter's Transcript on Appeal, Vol. II at 403.

In his seventh ground, Ledbetter contends that trial counsel was ineffective for failing to object to the imposition of a life sentence as unconstitutional.  The California Court of Appeal rejected that argument, holding:

> [Ledbetter] contends the failure to object to his sentence as cruel and/or unusual was the fault of his ineffective trial counsel.  Because we addressed the merits of [Ledbetter's] constitutional claims despite his failure to raise them below, we need not address his claim of ineffective assistance of counsel in that regard.[77]

Because the California Court of Appeal addressed this ground on appeal, Ledbetter cannot claim that he suffered any prejudice.  Ledbetter is not entitled to relief under his seventh ground.

Ground 4:  Denial of *Marsden* Motions

Ledbetter contends that he was wrongfully denied his counsel of choice.  The record reflects that Ledbetter was represented by three separate members of the Public Defenders Office. During the course of his representation, Ledbetter filed four *Marsden* motions, three against the first two public defenders and the last one against his trial counsel.[78]  On September 26, 2007, the matter was called for trial by jury.  At that time Ledbetter made his fourth *Marsden* motion. After hearing the motion and examining counsel *in camera* the trial court ruled:

> THE COURT:  All right. Mr. Ledbetter, anything else?
> THE DEFENDANT:  Just, ma'am, that I be able to  have the right to be represented by the counsel of my choice, and pretty much I would like to choose one of that I wanted to hire, if that's possible.
> THE COURT:  Well, Mr. Ledbetter, we are now starting the trial, and it would be unlikely that an attorney would be prepared to come in and take this trial and proceed.  So unless you have an attorney that you have retained that is prepared

---

[77] *Ledbetter*, 2009 WL 1804157 at 5.

[78] The record reflects that the second assigned Public Defender left the office and was replaced for trial by the third Public Defender, Mr. Berson, who tried the case.

to come in tomorrow morning and try this case, the request is not timely. If you have an attorney that you have retained that can come in tomorrow and take the case and be prepared to proceed, that is one thing, but I think that is improbable.

I do not find that there has been a breakdown in communication between you and Mr. Berson such that he cannot continue to represent you. I have spoken with all attorneys at length about this case. He seems very knowledgeable about the facts, very prepared and understands his duty to give you his best legal representation, and I find that he has done so and is representing you in not just a competent manner but a highly competent manner.

So I do not find that the Court should remove him as attorney of record.

In terms of you retaining your own counsel, you also have that prerogative, but cannot be done in a time that delays the trial.

So the Court's ruling as to the Marsden motion is that Mr. Berson has competently represented Mr. Ledbetter, that there has not been such a breakdown in communication that Mr. Berson cannot continue to competently represent Mr. Ledbetter, and the Marsden motion is denied.[79]

First, the Court notes that the right to counsel of one's choice is a qualified right that applies only to people who can afford to retain counsel.[80] In this case, the issue is neither Ledbetter's right to choice of counsel nor a denial of counsel. The Supreme Court has "reject[ed] the claim that the Sixth Amendment guarantees a 'meaningful relationship' between an accused and his counsel."[81] Instead the constitutional question is whether the conflict between Ledbetter and his attorney prevented effective assistance of counsel.

Thus, the ultimate constitutional question the federal courts must answer here is not whether the state trial court "abused its discretion" in not deciding Schell's motion, but whether this error actually violated Schell's constitutional rights in that the conflict between Schell and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn

---

[79] Docket No. 1 at 112-13.

[80] *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) (citing *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624-25 (1989)); *see Schell v. Witek*, 218 F.3d 1017, 1025-26 (9th Cir. 2000) (en banc).

[81] *Morris v. Slappy*, 461 U.S. 1, 13-14 (1983).

in an attorney-client relationship that fell short of that required by the Sixth Amendment.[82]

Here, Ledbetter expressed nothing more than a general sense of dissatisfaction with his attorney's performance, not any conflict, irreconcilable or otherwise.  As noted above in discussing Ledbetter's third and seventh grounds, Ledbetter's claims of ineffective assistance of trial counsel are meritless.

Ledbetter does not allege either that he had retained private counsel that was ready to proceed on the day set for trial or that there was any reasonably realistic possibility he could retain private counsel.  Accordingly, this Court cannot say that the trial court abused its discretion or, in any meaningful manner, denied Ledbetter the right to counsel of his choice. Ledbetter is not entitled to relief under his fourth ground.

Ground 5:  Ineffective Assistance of Appellate Counsel

Ledbetter contends that because appellate counsel failed to raise on appeal that the trial court improperly limited his opportunity to impeach the victim and a witness (Ground 2), that his *Marsden* motions were improperly denied (Ground 4), and that the "Three-Strikes" law violates the *Ex Post Facto* Clause (Ground 1), appellate counsel was ineffective.  The failure of appellate counsel to raise meritless or weak issues does not constitute ineffective assistance of counsel.[83]

Because this Court has determined that Ledbetter's first, second, and fourth grounds lack merit,

---

[82] *Schell*, 218 F.3d at 1026.

[83] *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (holding that appellate counsel does not have an obligation to raise every nonfrivolous argument); *Miller v. Keeney*, 882 F.2d 1428, 1428 (9th Cir. 1989) (holding that appellate counsel's failure to raise a weak issue did not constitute ineffective counsel).

the failure of his appellate counsel did not fall below the standards, nor did Ledbetter suffer any

prejudice.  Ledbetter is not entitled to relief under his fifth ground.

Ground 6:  Cruel and Unusual Punishment

Ledbetter argues that the imposition of a sentence of twenty-five years to life for the

possession of the small amount of methamphetamine and for possession of a firearm by an ex-

felon constitutes cruel and unusual punishment under the Eighth Amendment.[84]  The California

Court of Appeal rejected Ledbetter's argument, holding:

> [Ledbetter] contends his sentences of 25 years to life for possession of
> methamphetamine and for possession of a firearm by an ex-felon both constitute
> cruel and unusual punishment under the United States Constitution and cruel or
> unusual punishment under the California Constitution.  He argues his failure to raise
> his constitutional claims below does not preclude us from considering them on
> appeal, and argues further that any failure to raise the claims was the result of
> ineffective assistance of counsel.  Respondent argues the claims were indeed
> forfeited by [Ledbetter's] failure to raise them and, in any event, the claims lack
> merit.
>
> Assuming [Ledbetter's] contentions are not forfeited for failure to raise them
> in the trial court [citations omitted], they fail on the merits.
>
> Under the proscription of "cruel and unusual punishment" in the Eighth
> Amendment to the United States Constitution (applicable to the states via the
> Fourteenth Amendment), a "'narrow proportionality principle . . . applies to
> noncapital sentences.'"  (*Ewing v. California* (2003) 538 U.S. 11, 20 [155 L.Ed.2d
> 108, 117] (*Ewing* ), quoting *Harmelin v. Michigan* (1991) 501 U .S. 957, 996-997
> [115 L.Ed.2d 836, 865-866] (*Harmelin* ).)  This constitutional principle "forbids only
> extreme sentences that are 'grossly disproportionate' to the crime."  (*Ewing, supra,*
> 538 U.S. at p. 23 [155 L.Ed.2d at p. 119], quoting *Harmelin, supra,* 501 U.S. at p.
> 1001 [155 L.Ed.2d at p. 869].)
>
> Objective factors guiding the proportionality analysis include "(i) the gravity
> of the offense and the harshness of the penalty; (ii) the sentences imposed on other
> criminals in the same jurisdiction; and (iii) the sentences imposed for the commission
> of the same crime in other jurisdictions."  (*Solem v. Helm* (1983) 463 U.S. 277, 292

---

[84] To the extent that Ledbetter argues his sentence also violates the parallel California
constitutional provision, that claim is beyond the purview of this Court in a federal habeas
proceeding.  *Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no
federal concern whether state law was correctly applied).

[77 L.Ed.2d 637, 650].)  But only in the rare case where the first factor is satisfied does a reviewing court consider the other two factors.  (*Harmelin, supra,* 501 U.S. at p. 1005 [115 L.Ed.2d at pp. 871-872] (conc. opn. of Kennedy, J.).)

The United States Supreme Court rejected an Eighth Amendment challenge to a 25-years-to-life Three Strikes sentence in *Ewing, supra,* 538 U.S. 11 [155 L.Ed.2d 108], noting that recidivism has traditionally been recognized as a proper ground for increased punishment.  (*Id.* at p. 25 [at p. 120].)  Given the [Ledbetter's] long criminal history, the court held that the [Ledbetter's] punishment was not disproportionate despite the relatively minor character of his current felony. (*Id.* at p. 29 [at p. 122].)

Here, [Ledbetter's] criminality began in 1989 with a conviction for driving under the influence.  Over the next four years, [Ledbetter] was convicted of three crimes of violence against various girlfriends, possession of narcotics, theft, and weapons charges, culminating in convictions in two separate incidents in 1993, one for assault with a firearm and one for robbery, resulting in a 16-year state prison sentence.  He was paroled in May 2004, but returned to custody four times for use of methamphetamine and heroin, absconding and possession of drug paraphernalia. [Ledbetter's] parole agent noted that [Ledbetter's] adjustment to parole was "horrible," and characterized him as a "drug addict with a high risk for potential violence."

[Ledbetter's] behavior while incarcerated mirrors his behavior outside of prison.  While in prison, he was involved in six separate incidents, five of which involved violence against other inmates, and two of which involved the use of "pruno," a fermented fruit drink.

[Ledbetter] claims that, because he possessed only "a small amount of methamphetamine," the punishment is grossly disproportionate to the crime, urging us to reach the same conclusion as that in *People v. Carmony* (2005) 127 Cal.App.4th 1066 (*Carmony*).  In *Carmony,* the defendant failed to register as a sex offender within five days of his birthday, thus violating section 290, for which the defendant received a state prison sentence of 26 years to life.  (*Carmony, supra,* 127 Cal.App.4th at p. 1074.)  We reversed, finding that, under the circumstances of the case, the sentence constituted cruel and unusual punishment because the "offense was an entirely passive, harmless, and technical violation of the registration law . . . ." (*Id.* at p. 1077.)  Such is not the case here.

[Ledbetter] has a history of illicit drug use and weapons charges, both of which often play a pivotal role in the commission of other crimes.  Just one year prior to the instant offenses, [Ledbetter] was still considered by his parole officer to be a "drug addict with a high risk for potential violence," despite having spent a significant amount of time in prison.

The gravity of [Ledbetter's] recent offenses is demonstrated by the harm threatened to the arresting police officer and the public.  [Ledbetter] twice dropped his hands out of the officer's sight and down close to the location where the gun was later found, despite repeated instructions from Officer Gomez to keep his hands on the dash.  Needless to say, this placed everyone in the vicinity of the traffic stop at

risk.  Furthermore, the fact that [Ledbetter] was found to be in possession of 2.9 grams of methamphetamine, along with a pipe in the center console of the car, suggests his addiction to drugs was ongoing, placing those around him at further risk of harm, given that he was operating a motor vehicle and had ready access to a drug that would likely impair his ability to do so.  [Ledbetter's] punishment was not grossly disproportionate in light of his prior record and totality of the circumstances surrounding the commission of the offense.  [Citations omitted]

Similarly, article I, section 17 of the California Constitution proscribes "cruel or unusual punishment."  Although this language is construed separately from the federal constitutional ban on "cruel and unusual punishment" (*Carmony, supra,* 127 Cal.App.4th at p. 1085), the method of analysis is similar:  the reviewing court considers "the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society"; the comparison of "the challenged penalty with the punishments prescribed in the same jurisdiction for different offenses"; and the comparison of "the challenged penalty with the punishments prescribed for the same offense in other jurisdictions. . . ." [Citation omitted]

The purpose of this analysis is to determine whether the punishment is "so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." [Citation omitted]

We do not find that this is one of those rare cases where the sentence is so disproportionately harsh as to shock the conscience or to offend fundamental notions of human dignity.  [Citation omitted] As previously discussed in this opinion, [Ledbetter's] past and present offenses are grave.  His abiding addiction to drugs, as well as his apparent disregard for the prohibition against possessing firearms, only exacerbates each circumstance.  His punishment is not disproportionate to that inflicted on other recidivists under the Three Strikes law.

[Ledbetter] cites numerous cases in support of his argument that the punishment in other states for "a similar drug offense" shows his punishment is cruel and unusual.  Those arguments are unpersuasive. [Ledbetter] received a 16-year state prison sentence after being convicted of committing violent offenses.  As a result, he is prohibited from possessing a firearm.  Yet, within a year of being paroled following completion of a lengthy prison sentence, [Ledbetter] not only committed the crimes against Smith, but was thereafter found in possession of both a handgun and methamphetamine, not to mention the stolen vehicle.  [Ledbetter] continues to violate parole and continues to feed his drug addiction, doing nothing to demonstrate an interest in abiding by the law.  In any event, the interjurisdictional test does not require proof that California's sentencing scheme as to recidivists is less harsh than others.  [Citation omitted]

[Ledbetter] has not shown that his punishment was "cruel and unusual" under the federal Constitution, or "cruel or unusual" under the California Constitution.[85]

---

[85] *Ledbetter*, 2009 WL 1804157 at 3-5.

Although Ledbetter may have received a severe sentence and the Eighth Amendment prohibits sentences that are grossly disproportionate to the crime, "outside the context of capital punishment, successful challenges to the proportionality of particular sentences will be exceedingly rare."[86]   Balanced against the proportionality principle is the corollary principle that the determination of prison sentences is a legislative prerogative not within the province of the courts.[87]   The Ninth Circuit has held that "'only extreme sentences that are grossly disproportionate to the crime' violate the Eighth Amendment."[88]   As the Ninth Circuit has observed with respect to proportionality:

> [T]he Supreme Court has noted that proportionality analysis under the Eighth Amendment should be guided by objective criteria, including: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Solem v. Helm,* 463 U.S. 277, 292, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).   Despite this, the Supreme Court has not uniformly applied this three step analysis. *See, e.g., Harmelin v. Michigan,* 501 U.S. 957, 1005, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991); *Rummel v. Estelle,* 445 U.S. 263, 285, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980).
>
> In an attempt to resolve this inconsistency, the Supreme Court has explicitly identified that which constitutes "clearly established federal law" in its Eighth Amendment jurisprudence for the purpose of habeas review.   Specifically, in *Lockyer v. Andrade,* 538 U.S. 63, 72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), after conceding that its "precedents in this area have not been a model of clarity," the Court held that "one governing legal principle emerges as 'clearly established' under § 2254(d)(1):   A gross disproportionality principle is applicable to sentences for terms of years." *Lockyer,* 538 U.S. at 72, 123 S.Ct. 1166.   In so holding, the Court made no mention of any constitutional imperative requiring that courts make the various intra- and inter-jurisdictional comparisons recommended by the *Solem* court. *See id.*   Instead, the Supreme Court held that "the only relevant clearly established

---

[86] *Solem v. Helm,* 463 U.S. 277, 289-90 (1983) (internal alterations and emphasis omitted).

[87] *Rummel v. Estelle*, 445 U.S. 263, 275-76 (1980).

[88]  *Cacoperdo v. Demosthenes,* 37 F.3d 504, 507 (9th Cir.1994) (quoting *United States v. Bland,* 961 F.2d 123, 129 (9th Cir.1992)).

law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case."   *Id.* at 73, 123 S.Ct. 1166.[89]

In light of *Nunes*, in particular its analysis of the Supreme Court decision in *Andrade*, this Court cannot say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court rendered its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[90]   Ledbetter is not entitled to relief under his sixth ground.[91]

---

[89] *Nunes v. Ramirez-Palmer*, 485 F.3d 432, 438-39 (9th Cir. 2007).

[90] 28 U.S.C. § 2254(d).

[91] *See Rios v. Garcia*, 390 F.3d 1082, 1085-86 (9th Cir. 2004).

## V.  CONCLUSION AND ORDER

Ledbetter is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[92]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[93]

The Clerk of the Court is to enter judgment accordingly.

Dated: August 14, 2012.

      /s/ James K. Singleton, Jr.      

JAMES K. SINGLETON, JR.

United States District Judge

---

[92] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705-06 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's  resolution of his constitutional claims or that jurists could conclude  the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El v. Cockrell*, 537 U.S. 325, 327 (2003))).

[93] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.